# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **DISPLAY TECHNOLOGIES LLC,** | Civil Action No. 17-cv-1426-RGA |
| Plaintiff, | **PATENT CASE** |
| v. | **JURY TRIAL DEMANDED** |
| **GIBSON INNOVATIONS USA, INC.,** | |
| Defendant. | |

## DEFENDANT GIBSON INNOVATIONS USA, INC.'S OPPOSITION TO PLAINTIFF DISPLAY TECHNOLOGIES LLC'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

OF COUNSEL:

BATES & BATES, LLC

Andrea E. Bates (*Pro Hac Vice*)
Kurt W. Schuettinger (*Pro Hac Vice*)
1890 Marietta Boulevard NW
Atlanta, GA 30318
(404) 228-7439
abates@bates-bates.com
kschuettinger@bates-bates.com
*Attorneys for Defendant Innovations Brands, Inc.*

FERRY JOSEPH, P.A.

*/s/ Rick S. Miller*
Rick S. Miller (#3418)
824 Market St., Suite 1000
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555
rmiller@ferryjoseph.com
*Attorney for Defendant Innovations Brands, Inc.*

# TABLE OF CONTENTS

I.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ............... 2

II.   SUMMARY OF ARGUMENT ........................................................ 2

III.  STATEMENT OF FACTS ............................................................ 4

IV.  LEGAL STANDARDS ............................................................... 6

V.   ARGUMENT AND CITATION TO AUTHORITY ..................................... 7

    A.  Amendment would be Futile as the '723 Patent-Ineligible under 35 U.S.C. §101 because it covers an abstract idea ........................................................ 7

        1.  Like the '723 Patent, courts have found patents that cover the transfer of content between computers as abstract ........................... 8

        2.  The '723 Patent's Claims are abstract as they recite limitations in purely functional terms ....................................................... 11

        3.  The '723 Patent's claims are abstract because they cover well-known or fundamental concepts .................................................... 12

    B.  Amendment would be futile because the '723 Patent's claims fail to recite an inventive concept ........................................................ 13

VI.  CONCLUSION ..................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*3G Licensing, S.A. v. Blackberry Ltd.,*

   2018 WL 1419085 (D. Del. Mar. 22, 2018) ...................................................................3, 14, 17

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*

   882 F.3d 1121 (Fed. Cir. 2018) ..........................................................................3, 14,18

*Affinity Labs of Texas, LLC v. Amazon.com Inc.,*

   838 F.3d 1266 (Fed. Cir. 2016) .....................................................................Passim

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*

   838 F.3d 1253 (Fed. Cir. 2016) .....................................................................Passim

*Alice Corp. Pty. v. CLS Bank Int'l,*

   134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014). ........................................................... 7,8,14

*Barefoot Architect, Inc. v. Bunge,*

   632 F.3d 822 (3d Cir. 2011)...........................................................................7

*Berkheimer v HP Inc.,*

   881 F.3d at 1369 (Fed. Cir. 2018)..................................................................14

*buySAFE, Inc. v. Google, Inc.,*

   765 F.3d 1350 (Fed. Cir. 2014) ....................................................................18

*Callwave Comm'ns, LLC v. AT & T Mobility,*

   207 F. Supp. 3d 405 (D. Del. 2016) ...............................................................7

*CyberSource Corp. v. Retail Decisions, Inc.,*

   654 F.3d at 1370 (Fed. Cir. 2011)..................................................................19

*Enfish, LLC v. Microsoft Corp.,*

   822 F.3d 1327 (Fed. Cir. 2016) .....................................................................8

*FairWarning IP, LLC v. Iatric Sys., Inc.,*

   839 F.3d 1089 (Fed. Cir. 2016) ...................................................................13

*In re Chemed Corp., S'holder Derivative Litig.,*

   2017 WL 1712530 (D. Del. Apr. 25, 2017)...................................................6

*In re TLI Communications LLC Patent Litigation,*

   823 F.3d 607 (Fed. Cir. 2016) .............................................................Passim

*Intellectual Ventures I LLC v. Erie Indem. Co.,*

   850 F.3d 1315 (Fed. Cir. 2017) ...................................................................14

*Intellectual Ventures I LLC v. Erie Indem. Co.,*

   2017 WL 5041460............................................................................... 12,13

*Intellectual Ventures I LLC v. Symantec Corp.,*

   838 F.3d............................................................................................ 12,13

*Internet Patents Corp. v. Active Network, Inc.,*

   790 F.3d 1343 (Fed. Cir. 2015) .....................................................................8

*IPA Techs., Inc. v. Amazon.com, Inc.,*

   2018 WL 1583051 (D. Del. Mar. 31, 2018) ................................................18

*Landmark Tech., LLC v. Assurant, Inc.,*

   2015 WL 4388311 (E.D. Tex. July 14, 2015) ...............................................8

*Lanier v. Branch Banking & Tr. Co.*

   No. CA 3:12-628-MBS-SVH, 2013 WL 4692586 .......................................7

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.,*

   811 F.3d 1314 (Fed. Cir. 2016) ........................................................11,18,19

*OIP Techs., Inc. v. Amazon.com, Inc.,*

   788 F.3d 1359 (Fed. Cir. 2015) .....................................................................7

*OpenTV, Inc.* v. *Apple, Inc.,*

    2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ................................................................................17

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB,

    2016 WL 2742379 (E.D. Tex. May 10, 2016) ...........................................................................18

*RecogniCorp, LLC v. Nintendo Co.,*

    855 F.3d 1322 (Fed. Cir. 2017) ....................................................................................... 14,17

*Roquette Freres v. SPI Pharma, Inc.,*

    2009 WL 1444835 (D. Del. May 21, 2009) ............................................................................6,7

*Sound View Innovations, LLC v. Facebook, Inc.,*

    204 F. Supp. 3d 655 (D. Del. 2016) ..........................................................................................8

*Synopsys, Inc. v. Mentor Graphics Corp.,*

    839 F.3d 1138 (Fed. Cir. 2016) ..............................................................................................14

*Tele-Publ'g, Inc. v. Facebook, Inc.,*

    252 F. Supp. 3d 17 (D. Mass. 2017) ......................................................................................17

*TriPlay, Inc. v. Whatsapp Inc.,*

    2018 WL 1479027 (D. Del. Mar. 27, 2018) ....................................................................3,15,18

*Two–Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*

    874 F.3d 1329 (Fed. Cir. 2017) ....................................................................................... 14,18

*Ultramercial, Inc. v. Hulu, LLC,*

    772 F.3d 709 (Fed. Cir. 2014) ..........................................................................................Passim

*W. View Research, LLC v. Bayerische Motoren Werke AG,*

    226 F. Supp. 3d 1071 (S.D. Cal. 2016) .............................................................................. 15,18

## **STATUTES**

35 U.S.C. § 101...........................................................................................................................Passim

iv

## **RULES**

Fed. R. Civ. P. 15(a)..................................................................................................................6

Fed. R. Civ. P. 15(a)(2)............................................................................................................6

Fed. R. Civ. Pro. 12(b)(6) ................................................................................................ 2,6,7

## **OTHER AUTHORITIES**

U.S. Patent No. 9, 300, 723 ("the '723 Patent") ...................................................Passim

## I.     STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

Plaintiff Display Technologies, LLC ("Display") filed its First Amended Complaint on December 13, 2017, asserting Defendant Gibson Innovations USA, Inc. ("Innovations") infringed Display's U.S. Patent No. 9, 300, 723 ("the '723 Patent"). The '723 Patent is attached as Exhibit A to the First Amended Complaint. [D.I. 9.] On February 5, 2018, Innovations moved to dismiss the First Amended Complaint under Fed. R. Civ. Pro. 12(b)(6) because all the asserted claims are invalid under 35 U.S.C. § 101. [D.I. 12.] In response to Innovations' Motion to Dismiss, Display filed the present Motion for Leave to Amend to File a Second Amended Complaint and asked that this Court extend the deadline for Display to respond to Innovations' Motion to Dismiss until the Court rules on the Motion for Leave. [D.I. 17-18.] Because the proposed amendment would be futile, this is Innovations' Opposition Brief to that Motion.

## II.    SUMMARY OF ARGUMENT

The '723 Patent is patent-ineligible because it claims the abstract idea of establishing a communication link between two electronic devices, such that a security measure (like a password, firewall, etc.) associated with one of the devices can be bypassed. Specifically, claim 12 of the '723 Patent at its core is simply placing two electronic devices in communication over a computer network. Placing electronic devices in communication via a computer network is not new. In fact, this technology has existed for decades. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014)("Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis."); *see also Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016) ("[i]t is not debatable, however, that the delivery of media content to electronic devices was well known long before the priority date of the '085 patent[.]").

In seeking leave to amend, Display makes no argument that the '723 Patent does not claim an abstract idea.  As the '723 Patent claims are an abstract idea, it must recite an "inventive concept" that would make the abstract idea patentable.  In this regard, Display seeks leave to amend the complaint to add allegations that "the inventions claimed in the '723 Patent require the bypassing of a 'security measure' in order to transfer an electronic file'" and "this feature is not conventional or routine, nor is it obvious since security measures are typically put in place to be used, not bypassed." [*See* Proposed Second Amended Complaint at ¶ 17.]  Display then cites *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) for the proposition that the "Federal Circuit held that it was an abuse of discretion for the District Court to deny leave to amend because the 'allegations, if accepted as true, contradict the district's conclusion that claimed combination was unconventional or routine.'"  [D.I. 17, 1.]

Even post-*Aatrix*, this District has repeated that, "[t]o save a patent at step two, an inventive concept must be **evident in the claims.**"  *See 3G Licensing, S.A. v. Blackberry Ltd.*, No. CV 17-82-LPS-CJB, 2018 WL 1419085, at *6 (D. Del. Mar. 22, 2018) ("The Court agrees with Defendants.  No 'saving inventive concept' is evident in the claims.") (internal citation omitted, emphasis in the original); *see also TriPlay, Inc. v. Whatsapp Inc.*, No. CV 13-1703-LPS-CJB, 2018 WL 1479027, at *11 (D. Del. Mar. 27, 2018) (granting motion to dismiss where "[t]he claims, specification, and TAC are silent as to **how** the proposed inventive concept is implemented") (emphasis added).  Here, neither the proposed Second Amended Complaint, specification, or more importantly, the claims themselves disclose **how** a communication link is structured to bypass a security measure.  Thus, bypassing of a "security measure" cannot constitute an inventive step, which a user could simply do on their own by entering a password.

Accordingly, Innovations requests this Court deny Display's Motion for Leave to File a Second Amended Complaint, as amendment would be futile given the '723 Patent is invalid on its

face and Innovations would suffer prejudice by having to continue to defend against meritless claims.

## III.   <u>STATEMENT OF FACTS</u>

Presently before this Court is Display's Motion for Leave to File a Second Amended Complaint, wherein it seeks leave to amend its First Amended Complaint to add the following allegations to Paragraph 17:

> The inventions claimed in the '723 Patent require the bypassing of a "security measure" in order to transfer an electronic file.  This represents an improvement over prior art systems that require the use of, not the bypassing of, a security measure in order to transfer a file over a network.  As such, this feature is not conventional or routine, nor is it obvious since security measures are typically put in place to be used, not bypassed.  This inventive concept constitutes an improvement of the operation and efficiency of the system by simplifying file transfers for users who are in a position to know that there is no need to comply with the requirements of a security measure for certain file transfers.

[*See* proposed Second Amended Complaint at ¶ 17.]

The proposed Second Amended Complaint alleges that Innovations is infringing "claims 12, 14, 16, 17, and 20 of the '723 Patent."  [*See* proposed Second Amended Complaint at D.I. 17-1, ¶ 10.]  The proposed Second Amended Complaint does not attach the '723 Patent, but it is attached to the First Amended Complaint.  The '723 Patent purports to disclose "a digital media communication protocol structured to facilitate transferring and/or transmitting one or more digital media files to and/or from a media terminal and a media node via at least one interactive computer network."  [*See* '723 Patent at 1:16-21.]

Claim 12 is the only independent claim Display alleges that Innovations is infringing.  Claims 14, 16, 17, and 20 are dependent claims tied to Claim 12.

Independent Claim 12 recites:

12.   A media system configured to receive a media file from a wireless mobile device over communication network, comprising:
a wireless receiver;

a security measure; and

the media system disposed in an accessible relation to at least one interactive computer network that has a wireless range structured to permit authorized access to said at least one interactive computer network,

the wireless mobile device within said wireless range,
wherein said wireless mobile device is detectable by said system,

at least one digital media file initially disposed on the wireless mobile device, said media system being structured to detect said wireless mobile device disposed within said wireless range,

a communication link structured to dispose said media system and said wireless mobile device in a communicative relation with one another via said at least one interactive computer network,

said communication link being initiated by said media system,

said wireless mobile device and media system being structured to transmit said at least one digital media file therebetween via said communication link, and

said communication link is structured to bypass the security measure of the media system for a limited permissible use of the communication link by the wireless mobile device for only transferring the at least one digital media file to, and displaying the at least one digital media file on, the media system.
[*See* '723 Patent at 8:29-59.]

Dependent claims 14, 16, 17, and 20 stem from claim 12.  Dependent claim 14 recites the "media system of claim 12, wherein the transmission of the at least one digital media file from the wireless mobile device to the media system completely bypasses the security measure."  [*See* '723 Patent at 8:62-65.]  Dependent claim 16 recites the "media system of claim 12, wherein the media system is an audio system."  [*See* '723 Patent at 9:1-2.]  Dependent claim 17 recites the "media system of claim 12, wherein the communication link is at least one of a peer-to-peer connection, blue-tooth connection, and a WiFi connection."  [*See* '723 Patent at 9:1-2.]  Finally, dependent claim 20 recites the "media system of claim 12, wherein the at least one media file is provided by the wireless mobile device."  [*See Id.* at 9: 12-13.]

Claim 12 merely recites a system for transmitting a digital media file from a media node to a media terminal over a communication link.  The generic technological elements of the claim such as

"media system," "media terminal," "interactive computer network," "media node," "wireless range," "authorized access," "digital media file," "communication link," and "security measure" individually, or collectively do not transform the abstract idea into something more. [*See* '723 Patent at Claim 12.] In sum, independent claim 12 does not recite patentable subject matter because it is directed to the abstract idea of placing electronic devices in communication via a computer network, and the claim does not contain an inventive concept to transform the abstract idea to patent-eligible subject matter. [*See Id.*]

Consequently, this Court should deny Display's Motion for Leave to Amend to File a Second Amended Complaint as amendment would be futile because the relevant '723 Patent claims are directed to an abstract idea and lack an inventive concept.

## IV.   <u>LEGAL STANDARDS</u>

Fed. R. Civ. P. 15(a) provides that, other than in certain circumstances where a party may amend a pleading as a matter of course, a party may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule further explains that a court should "freely give leave [to amend the pleadings] when justice so requires." *In re Chemed Corp., S'holder Derivative Litig.*, No. CV 13-1854-LPS-CJB, 2017 WL 1712530, at *13 (D. Del. Apr. 25, 2017). The "factors [that a court should] consider in weighing a motion for leave to amend are well-settled: (1) whether the amendment has been unduly delayed; (2) whether the amendment would unfairly prejudice the non-moving party; (3) whether the amendment is brought for some improper purpose; and (4) whether the amendment is futile." *See Id.*

Determining whether a motion to amend would be futile requires the Court to apply "the same standard of legal sufficiency as under Rule 12(b)(6)." *Roquette Freres v. SPI Pharma, Inc.*, No. C.A. 06-540GMS, 2009 WL 1444835, at *3 (D. Del. May 21, 2009). That determination, whether a claim survives a 12(b)(6) motion, is a "purely legal question." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d

822, 835 (3d Cir. 2011).  "An amendment is futile when it fails to state a claim upon which relief may be granted."  *Roquette Freres*, 2009 WL 1444835, at *3.

As addressed below, amendment would be futile because the '723 Patent's claims are not patent-eligible.  Thus, Innovations would suffer prejudice by having to defend against meritless claims.  *See Lanier v. Branch Banking & Tr. Co.*, No. CA 3:12-628-MBS-SVH, 2013 WL 4692586, at *8 (D.S.C. May 30, 2013), report and recommendation adopted sub nom. *Lanier v. Branch Bank & Tr. Co.*, No. CA 3:12-0628-MBS, 2013 WL 4696138 (D.S.C. Aug. 29, 2013) ("Plaintiffs' proposed amendment would be futile and would cause Defendants prejudice in continuing to defend against meritless claims.")

## V.   ARGUMENT AND CITATION TO AUTHORITY

When patent claims on their face are plainly directed to an abstract idea, a court may properly assess patent-eligibility under § 101 at the pleading stage.  *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015).  In *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014) the Supreme Court identified a two-step "framework for distinguishing patents that claim" "abstract ideas from those that claim patent-eligible applications of those concepts."  *Id.* at 2355.  First, a court must determine whether the claim is "directed to" a patent-ineligible concept such as an abstract idea.  *Id.* at 2355.  "If the answer is yes, the court must look to 'the elements of the claim both individually and as an 'ordered combination' to see if there is an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Callwave Commc'ns, LLC v. AT & T Mobility*, 207 F. Supp. 3d 405, 409 (D. Del. 2016); (citing *Alice*, 134 S.Ct. at 2355.)

A.   **Amendment would be Futile as the '723 Patent is Patent-Ineligible under 35 U.S.C. § 101 because it covers an abstract idea.**

7

Under *Alice's* first step, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). "[T]he court looks to the character of the invention and the general purpose of the claim." *Landmark Tech., LLC v. Assurant, Inc.*, No. 6:15-CV-76-RWS-JDL, 2015 WL 4388311, at *4 (E.D. Tex. July 14, 2015).

In the present case, the character and general purpose of the relevant claims of the '723 Patent at its core is simply placing two electronic devices in communication over a computer network.   As addressed below, the '723 Patent is abstract because: (1) courts have found patents like the '723 Patent that cover the transfer of content between computers as abstract; (2) the '723 Patent's claims are abstract as they recite limitations in purely functional terms; and (3) the '723 Patent's claims are abstract because they cover well-known or fundamental concepts.  In its Motion for Leave, Display does not argue the '723 Patent's claims do not cover an abstract idea; rather, it merely seeks to add allegations to the proposed Second Amended Complaint regarding whether the patent claims an inventive step.

1.   **Like the '723 Patent, courts have found patents that cover the transfer of content between computers as abstract.**

To evaluate whether an invention is directed to an "abstract idea," courts "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Sound View Innovations, LLC v. Facebook, Inc.*, 204 F. Supp. 3d 655, 659 (D. Del. 2016) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016)).  In addressing computer-implemented patents, the court in *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 610 (Fed. Cir. 2016) contrasted claims that are directed to an improvement in the functioning of a computer with claims that "simply add[ ] conventional computer components to well-known business practices" or consist only of "generalized steps to be performed on a computer using conventional computer activity." *Id.* at 612.

8

The claims in *TLI* were not directed to an improvement in computer functionality, but were directed to "the use of conventional or generic technology in a nascent but well-known environment." *Id.* The court explained that the specification "does not describe a new telephone, a new server, or a new physical combination of the two," but instead "describes the system and methods in purely functional terms." *Id.* Thus, the court concluded, the claims "are not directed to a solution to a 'technological problem.'" *Id.* at 613.

Another case involving a similar abstract idea is *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014). The patent at issue in that case was drawn to a method for distributing copyrighted content over the Internet, in which a consumer would be given access to copyrighted material in exchange for viewing an advertisement, and the advertiser would pay for the copyrighted content. The court held that "[t]he process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad all describe an abstract idea, devoid of a concrete or tangible application." *Id.* at 715. The Court added that "[a]ny transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis." *Id.* at 717.

Similarly, in *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016), the court held the patent claimed an abstract idea where it claimed "the general concept of out-of-region delivery of broadcast content through the use of conventional devices, without offering any technological means of effecting that concept." *Id.* at 1262. In comparing the technology in *TLI* and *Ultramercial* with that in *Affinity Labs*, the Court stated:

> Although the technology at issue in this case differs from that involved in *TLI* and *Ultramercial*, the analysis of the "abstract idea" step in those cases is instructive here. **As in those cases, the patent in this case involves the conveyance and manipulation of information using wireless communication and computer technology.** While the inventions in those cases involved tangible components, the components were conventional and were used in conventional ways. The same is

true in this case, as the claimed cellular telephone is used to receive wireless signals, the claimed graphical user interface is used to display a menu of options to the user, and the claimed broadcasting system is used as the source of streaming content.

*Id.* at 1261 (emphasis added).

On the same day the Federal Circuit decided *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, it held in *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016) that "the concept of delivering user-selected media content to portable devices is an abstract idea." *Id.* at 1269. In affirming the lower court's conclusion that the "**idea of delivering media content to a wireless portable device is one of long standing**," the Federal Circuit reasoned that "**[i]t is not debatable, however, that the delivery of media content to electronic devices was well known long before the priority date of the '085 patent**, and Affinity does not argue otherwise." *Id.* at 1271 (emphasis added).

Similar to the technology at issue in *TLI, Ultramercial*, *Affinity Labs vs. DIRECTV* and *Affinity Labs vs. Amazon*, claim 12 of the '723 patent is directed to the abstract idea of establishing a communication link between two electronic devices, such that a security measure (like a password, firewall, etc.) associated with one of the devices can be bypassed. The idea of claim 12 at its core is simply placing two electronic devices in communication over a computer network. Placing electronic devices in communication via a computer network is not new. As *TLI, Ultramercial*, *Affinity Labs vs. DIRECTV* and *Affinity Labs vs. Amazon* make clear, this technology has existed for decades and is an abstract idea.

Claim 12 is thus fundamentally directed to an abstract idea (i.e. connecting two electronic devices over a computer network). Claim 12 merely recites a system for transmitting a digital media file from a media node to a media terminal over a communication link. The generic technological elements of the claim such as "media system," "media terminal," "interactive computer network," "media node," "wireless range," "authorized access," "digital media file," "communication link," and

"security measure" individually, or collectively do not transform the abstract idea into something more. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d at 1270 ("Yet the claim terms to which the magistrate judge referred, such as a 'network based media management system' and a 'graphical user interface,' are simply generic descriptions of well-known computer components.'"); *see also TLI Comm'ns LLC Patent Litig.*, 823 F.3d at 611 (physical components such as a telephone and a server "merely provide a generic environment in which to carry out the abstract idea"); *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (claims reciting an "interface," "network," and "database" are directed to an abstract idea).

### 2.   The '723 Patent's Claims are abstract as they recite limitations in purely functional terms.

"In applying the principles emerging from the developing body of law on abstract ideas under section 101, [the Federal Circuit] has noted that claims that are 'so result-focused, so **functional**, as to effectively cover any solution to an identified problem' **are frequently held ineligible under section 101**.'" *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258-1265 (Fed. Cir. 2016) (emphasis added) ("There is nothing in claim 1 that is directed to how to implement out-of-region broadcasting on a cellular telephone"); *see also In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d at 612 ("The specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms.")

The '723 Patent's claims are purely functional and are therefore patent-ineligible under section 101. For example, the specification of the '723 Patent only cites in a generic sense how the "communication link" is created. It states "[a]t least one embodiment of the present system 10 further includes a communication link 70 structured to dispose the media terminal(s) 20 and the media node(s) 30 in a communicative relation with one another via the interactive computer network 40." [*See* '723 Patent at 4:53-59.] "In particular, the communication

11

link 70 of the various embodiments of the present system 10 is created and/or requested by the media terminal 20." [*See Id.*] A "terminal program" for the media terminal and "one or more node programs" for the media nodes are mentioned as being "structured to facilitate the practice of the present system", though no more detail is given as to how these programs might create a communication link. [*See Id.* at 4:53-57, 5:45-64.]

The '723 Patent's claims merely describe functional terms that are patent-ineligible under Section 101. *See Affinity Labs of Texas, LLC,* 838 F.3d at 1258-1265 ("There is nothing in claim 1 that is directed to how to implement out-of-region broadcasting on a cellular telephone.")

> **3.    The '723 Patent's claims are abstract because they cover well-known or fundamental concepts.**

"The Supreme Court and [the Federal Circuit] have held that a wide variety of well-known and other activities constitute abstract ideas." *See Intellectual Ventures I LLC v. Erie Indem. Co.*, No. 2017-1147, 2017 WL 5041460, at *4 (the patent ineligible  "claims of the '298 patent merely implement an old practice in a new environment."); *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d at 1314 (the patent ineligible claim "merely applies a well-known idea using a generic computer.")

Here, the claims of the '723 Patent do not apply the abstract idea to a "nascent" environment; they merely add the well-known, fundamental concept of placing two electronic devices in communication over a computer network. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014)("Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis."); *see also Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1269  ("the concept of delivering user-selected media content to portable devices is an abstract idea.")

As the Federal Circuit said in *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, "**[i]t is not debatable**, however, that the **delivery of media content to electronic devices was well known**

*long* **before the priority date** of the '085 patent, and Affinity does not argue otherwise." *Id.* at 1271.   As the '723 Patent applies the well-known, fundamental concept of placing two electronic devices in communication over a computer network, the claims are directed to a patent ineligible abstract idea.   *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (the patent ineligible "claims merely implement an old practice in a new environment."); *see also In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d at 612 (the patent ineligible claims "are directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two.")

> ### B.   Amendment would be futile because the '723 Patent's claims fail to recite an inventive concept.

Display seeks to amend its complaint to add, among other things, the allegation that the "inventions claimed in the '723 Patent require the bypassing of a 'security measure' in order to transfer an electronic file."   [*See* Proposed Second Amended Complaint at ¶ 17.]   The second step of the *Alice* test requires the Court to determine whether the subject patent's claims—when viewed individually and as an ordered combination—contain "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application."   *Intellectual Ventures I LLC v. Erie Indem. Co.*, No. 201-1147, 2017 WL 5041460, at *5.

"But when a claim directed to an abstract idea contains no restriction on ***how*** the result is accomplished and the mechanism is not described, although this is stated to be the essential innovation, then the claim is not patent-eligible."   *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d at 1316 (Internal citation and punctuated omitted).   Therefore, claims directed to an abstract idea are patent-eligible only if they explain ***how*** the result of the patent is accomplished.   *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) ("Nowhere do the ***claims*** recite elements or components that describe ***how*** the invention overcomes these compatibility issues."); *see also Two–Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329,

1339 (Fed. Cir. 2017) ("Inquiry therefore must turn to any requirements for ***how*** the desired result is achieved.") (emphasis added).

"[I]t is not enough just to disclose the improvement in the specification; instead, the Court's task becomes to 'analyze the asserted claims and determine whether they ***capture these improvements.***'" *See 3G Licensing, S.A. v. Blackberry Ltd.*, No. CV 17-82-LPS-CJB, 2018 WL 1419085, at *5 (D. Del. Mar. 22, 2018) (quoting *Berkheimer v HP Inc.*, 881 F.3d at 1369 (Fed. Cir. 2018) (emphasis added). "In other words, '[t]o save a patent at step two, an inventive concept must be ***evident in the claims.***'" *See Id.* (quoting *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added); *see also Alice,* 134 S.Ct. at 2357 ("[W]e must examine the ***elements of the claim*** to determine whether it contains an 'inventive concept.'") (emphasis added); *Synopsys, Inc. v. Mentor Graphics Corp.,* 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

The proposed Second Amended Complaint, specification, and **claims** are silent on **how** the proposed alleged inventive step, *i.e.*, bypassing a security measure, is implemented.  The proposed Second Amended Complaint states the "Inventions claimed in the '723 Patent require the bypassing of a 'security' measure in order to transfer an electronic file."  [*See* Proposed Second Amended Complaint at ¶ 17.]  Display, however, makes no allegation regarding **how** the security measure is bypassed.  Compare *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, n. 3. (Fed. Cir. 2018) (Judge Reyna, Dissent) ("Aatrix's new allegations in the Second Amended Complaint included . . . **specific allegations and diagrams spelling out the technology of the Aatrix Patent**) with *TriPlay, Inc. v. Whatsapp pInc.*, No. CV 13-1703-LPS-CJB, 2018 WL 1479027, at *11 (D. Del. Mar. 27, 2018) (granting motion to dismiss where "[t]he claims, specification, and TAC are silent as to how the proposed inventive concept is implemented.").

**First**, the main problem addressed in the Description of the Related Art is the "drawback" of having media files on portable devices with small screens and small, weak sounding speakers. [*See* '723 Patent at 1:37-43.]  Thus, the Description of the Related Art discusses transferring files to a computer or other media devices that are "equipped with a larger or better quality screen, or having higher quality speakers" or "may have better editing software" "than that disposed on the portable device(s)." [*See Id.* at 1:44-49.]  As it is undeniable that transferring files from one media device to another is an abstract idea, it appears that Display now seeks to claim the inventive step is bypassing a security measure.  *See Ultramercial*, 772 F.3d at 717 ("Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis."); *see also Affinity Labs of Texas, LLC*, 838 F.3d at 1266 ("[i]t is not debatable, however, that the delivery of media content to electronic devices was well known long before the priority date of the '085 patent[.]").

In this regard, the Description of Related Art merely says in passing it would be "beneficial if the digital media communication protocol includes a communication link structured to bypass at least one or more security measures" just like it says it would be "particularly beneficial if the various media devices" are "structured to display, save, edit, manipulate, and/or transfer the one or more digital media files."  [*See Id.* at 1:65-2:2.]  The alleged inventive step of bypassing a security measure is untethered to the problem that the patent proposes to address small screens with small speakers. *See W. View Research, LLC v. Bayerische Motoren Werke AG*, 226 F. Supp. 3d 1071, 1081 (S.D. Cal. 2016) ("Untethered to the problems the patent disclosure identifies, these continuation claims are written at a level of abstraction that purports to claim any system employing a wireless device that sends an identifying signal to a receiver, which upon identifying the signal, accesses and provides information associated with the identified user, which can be downloaded to that user's portable electronic device.")

**Second**, the specification of the '723 Patent only cites in a generic sense how the "communication link" is created to bypass a security measure. It states "[a]t least one embodiment of the present system 10 further includes a communication link 70 structured to dispose the media terminal(s) 20 and the media node(s) 30 in a communicative relation with one another via the interactive computer network 40." [*See* '723 Patent at 4:53-59.] "In particular, the communication link 70 of the various embodiments of the present system 10 is created and/or requested by the media terminal 20." [*See Id.*] A "terminal program" for the media terminal and "one or more node programs" for the media nodes are mentioned as being "structured to facilitate the practice of the present system," though no more detail is given as to **how** these programs might create a communication link to bypass a security measure. [*See Id.* at 4:53-57, 5:45-64.] The generic description of "communication link" and "terminal program" demonstrates that claim 12 of the '723 Patent does not claim an inventive step. *See Affinity Labs of Texas, LLC*, 838 F.3d at 1271 ("The features set forth in the claims are described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent.").

**Third**, the Detailed Description of the '723 Patent makes clear that any generic media terminal can be used. "Accordingly, as shown in Fig. 1, the medial terminal(s) 20 of the various embodiments described herein may include a computer, however, any device structured to facilitate the practice of the present system in the intended fashion may be utilized, including but in no way limited to a desktop computer, laptop or notebook computer, PDA, video game console, mobile telephone, media system of a vehicle (e.g., an automobile), etc." [*See* '723 Patent at 2:40-48.] [Brackets in the Original.] The use of a generic/interchange media terminal demonstrates a lack of an inventive step. *See Affinity Labs of Texas, LLC*, 838 F.3d at 1271 ("In particular, claim 14 requires a 'network based delivery resource,' but that does not make the claim a patent-eligible

implementation of an abstract idea . . . . The specification makes clear that any technology capable of wireless communication of audio information to the device would be covered.")

**Fourth**, it is not apparent how this claimed invention is sufficiently transformed from a security measure being overcome by conventional means, such as simply inputting a password. *See Tele-Publ'g, Inc. v. Facebook, Inc.*, 252 F. Supp. 3d 17, 26 (D. Mass. 2017) ("Here, the security feature similarly recites steps that could be performed using a pencil and paper or the human mind."); *see also OpenTV, Inc.* v. *Apple, Inc.*, No. 14-CV-01622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) ("The problem of how to transmit, receive, store, and organize confidential information deriving from multiple sources is not a creature of the Internet age: solutions to this problem date back to the invention of smoke signals.").

**Fifth**, none of the claims at issue discuss at all **how** the communication link is structured to bypass at least one or more security measures.   Independent Claim 12 merely says "said communication link is structured to bypass the security measure of the media system," but it does not say **how** it is structured.   Of the four dependent claims – claims 14, 16, 17, and 20–, only dependent claim 14 mentions a security measure: "The media system of claim 12, wherein the transmission of the at least one digital media file from the wireless mobile device to the media system completely bypasses the security measure."  [*See* '723 Patent at 8:62-65.]

Here again, dependent claim 14 does not say **how** the transmission completely bypasses the security measure.  *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d at 1327 ("To save a patent at step two, an inventive concept must be evident in the **claims**.") (emphasis added); *see also 3G Licensing, S.A. v. Blackberry Ltd.*, No. CV 17-82-LPS-CJB, 2018 WL 1419085, at *6 (D. Del. Mar. 22, 2018) (granting motion to dismiss, after being notified by plaintiff of *Aatrix*, stating: "The Court agrees with Defendants.  No 'saving inventive concept,' *Two–Way Media,* 874 F.3d at 1336, is evident in the claims.""); *see also TriPlay, Inc. v. Whatsapp Inc.*, No. CV 13-1703-LPS-CJB, 2018 WL 1479027, at *11

(D. Del. Mar. 27, 2018)(granting motion to dismiss after *Aatrix* stating "Absent from the claims, specification, and the pleadings is any insight into ***how*** the claimed video delivery/clickable icon feature is achieved.") (emphasis added).

**Sixth**, "as the Federal Circuit has recognized, 'That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.'" *See IPA Techs., Inc. v. Amazon.com, Inc.*, No. CV 16-1170-RGA, 2018 WL 1583051, at *10 (D. Del. Mar. 31, 2018) (citing *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014)).   Simply amending the complaint to say the inventive step is bypassing a security measure is not enough to save the patent when the claims of the patent do not explain *how* the security measure is bypassed. *See Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *10 (E.D. Tex. May 10, 2016), *aff'd sub nom. Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols. Inc.*, 684 F. App'x 970 (Fed. Cir. 2017)(granting motion to dismiss where the alleged inventive step of "two-way firewall program" had no structural definition); *see also W. View Research, LLC v. Bayerische Motoren Werke AG*, 226 F. Supp. 3d 1071, 1080 (S.D. Cal. 2016), appeal dismissed, No. 17-1545, 2017 WL 3397442 (Fed. Cir. May 2, 2017) ("Nothing further is disclosed to explain the operation of this step if such a step was indeed inventive . . . . To the contrary, the specification represents that there are known methods of defeating this authentication process and therefore suggests the optional implementation of encryption protocols to enhance security"); *see also IPA Techs., Inc. v. Amazon.com, Inc.*, No. CV 16-1170-RGA, 2018 WL 1583051, at *10 (D. Del. Mar. 31, 2018) ("The lack of any teaching in the specification about how to construct a navigation query suggests that processes for constructing navigation queries were known in the art.")

**Consequently**, as "the transfer of content between computers is merely what computers do," *Ultramercial,* 772 F.3d at 717, the '723 Patent's claims would preempt the fundamental concept

of placing electronic devices in communication, and more specifically placing a media terminal in communication with a media node (such as a mobile phone or a laptop) via a computer network.

### C.      The dependent claims of the '723 Patent are patent-ineligible.

The analysis for dependent claims 14, 16, 17, and 20 are identical to that of independent claim 12.  These four additional dependent claims add limitations to claim 12's "media system" where the transmission of the digital media file completely bypasses the security measure; the media system is an audio system; the communication link is a peer-to-peer connection, a Bluetooth connection or a WiFi connection; and the media file is provided by the wireless device.  [*See* '723 Patent at 8:62-9:14.]

None of these four additional limitations changes the analysis related to the abstract idea and the failure to include an appropriate transformation—even if they implicate specific components or networking technologies.  *See Ultramercial, Inc.*, 772 F.3d at 716 ("The claims' invocation of the Internet also adds no inventive concept.  As we have held, the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101.")*; see also CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d at 1370 (Fed. Cir. 2011) (reasoning that the use of the Internet to verify credit card transaction does not meaningfully add to the abstract idea of verifying the transaction); *see also Affinity Labs of Texas, LLC*, 838 F.3d at 1270 ("Yet the claim terms to which the magistrate judge referred, such as a 'network based media management system' and a 'graphical user interface,' are simply generic descriptions of well-known computer components."); *see also TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 611 (physical components such as a telephone and a server "merely provide a generic environment in which to carry out the abstract idea"); *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (claims reciting an "interface," "network," and "database" are directed to an abstract idea).

Importing requirements into claim 12's media system to completely bypass the security measure, require the media system to be an audio system, employing a specific existing networking technology, or having the wireless device provide the media file, does not make this abstract idea patentable.   Completely bypassing a security measure is the same as bypassing a security measure, and the '723 Patent does not explain **how** either are accomplished.   Requiring a media system to be an audio system and requiring the communication link to comprise an existing networking technology adds nothing new or inventive.   Nor does requiring the media file to be provided by the wireless device.

None of these limitations transforms the abstract idea of simply placing two electronic devices in communication over a computer network.  If the Court allowed such claims, the claims would preempt a fundamental and well-known practice of placing two electronic devices in communication over a computer network.  Thus, the dependent claims do not alter the fact that the claims are for "placing two electronic devices in communication over a computer network."  *See Ultramercial,* 772 F.3d at 717 ("the transfer of content between computers is merely what computers do[.]").  Without more, there is not an inventive concept to ensure that this is significantly more than the mere abstract idea.  Therefore, these claims are also invalid under 35 U.S.C. § 101.

## VI.   <u>CONCLUSION</u>

The '723 Patent is patent-ineligible under 35 U.S.C. § 101 because it claims the abstract idea of placing two electronic devices in communication over a computer network and fails to recite an "inventive concept." The '723 Patent would pre-empt use of placing two electronic devices in communication over a computer network and would effectively grant a monopoly over an abstract idea.   As Display cannot state a claim for relief for patent infringement, this Court should deny Display's Motion for Leave to File a Second Amended Complaint as amendment would be futile.

20

Dated:  April 12, 2018

OF COUNSEL:

BATES & BATES, LLC                         FERRY JOSEPH, P.A.

Andrea E. Bates (*Pro Hac Vice*)            */s/ Rick S. Miller*
Kurt W. Schuettinger (*Pro Hac Vice*)       Rick S. Miller (#3418)
1890 Marietta Boulevard NW                  824 Market St., Suite 1000
Atlanta, GA 30318                           P.O. Box 1351
(404) 228-7439                              Wilmington, DE 19899
abates@bates-bates.com                      (302) 575-1555
kschuettinger@bates-bates.com               rmiller@ferryjoseph.com
*Attorneys for Defendant Innovations Brands, Inc.*   *Attorney for Defendant Innovations Brands, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been on April 12, 2018, to all counsel of record who are deemed to have consented

to electronic service via the Court's CM/ECF system per Local Rule CV-5.


*/s/ Rick S. Miller*
Rick S. Miller
